BLAKE ASSOCIATES, INC.,

v.

OMNI SPECTRA, INC., C.W. Swift Associates, Inc., Compucon Distributors, Inc., Ernest J. DeVita.

Civ. A. No. 81–3187–S.

United States District Court,
D. Massachussetts.

Jan. 12, 1988.

John B. Connarton, Jr., Medverd, Connarton & Simmons, Boston, Mass., for Blake Associates, Inc.

John R. Hailly, Neil P. Motenko, Nutter, McClennen & Fish, Boston, Mass., for Omni Spectra, Ernest J. DeVita.

Robert Glass, Glass & Brand, Boston, Mass., for C.W. Swift Associates, Inc. and Compucon Distributors, Inc.

Richard E. Bachman, Hale Sanderson Byrnes & Morton, Kenneth A. Pollenz, Avery Dooley, Post & Avery, Boston, Mass., for Microwave Comp.

REPORT AND RECOMMENDATION THAT SANCTIONS BE IMPOSED AGAINST PLAINTIFF AND ITS PRINCIPALS PURSUANT TO RULE 37(b)(2)(D), F.R.CIV.P.

ROBERT B. COLLINGS, United States Magistrate.

Rule 37(b)(2)(D), F.R.Civ.P., provides, in pertinent part, as follows:

(b) Failure to Comply with Order.

(2) *Sanctions by Court in Which Action is Pending.* If a party or an officer, director, or managing agent of a party ... fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule ..., the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

(D) ... [A]n order treating as a contempt of court the failure to obey any orders except an order to submit to a physical examination.

I RECOMMEND that the District Court impose sanctions pursuant to Rule 37(b)(2)(D), F.R.Civ.P., on the plaintiff, Blake Associates, Inc., and its principals, Joseph P. Blake and Eileen Blake on account of the plaintiff's blatant and willful violation of the Court's Order pursuant to Rule 37(a)(2), F.R.Civ.P. (# 118) entered November 14, 1986 and a further Order of the Court entered April 27, 1987. Mindful of the importance of specifying with some precision the nature of the contempt sanction to be imposed pursuant to Rule 37(b)(2)(D), F.R.Civ.P., *United States v. Westinghouse Electric Corp.*, 648 F.2d 642, 651 (9 Cir., 1981), I RECOMMEND that the District Judge to whom this case is assigned issue an order, pursuant to Rule 37(b)(2)(D), F.R.Civ.P. and Rule 42(b), F.R. Crim.P., to the plaintiff, Blake Associates, Inc., and its principals, Joseph P. Blake and Eileen Blake, to show cause why they should not be held in criminal contempt and punished as a sanction imposed pursuant to Rule 37(b)(2)(D) for willful violation of the above-specified Court Orders.

The Order (# 118) of November 14, 1986 required compliance by December 31, 1986. A motion for reconsideration (# 123) of the November 14th Order was denied by the District Judge to whom this case is assigned on February 24, 1987. Evidently, some extensions of the December 31st deadline were granted to the plaintiff by defendant, Omni Spectra (hereinafter, "Omni"). However, on March 23, 1987, Omni filed a motion to compel compliance with discovery order (# 135). On April 27, 1987, the motion was endorsed "The motion is ALLOWED" and the following Order issued:

Plaintiff Blake Associates is ORDERED to comply with the Order of Magistrate Collings by May 8, 1987.

Plaintiff served three pleadings in purported compliance with the Court's Orders. These have been recently filed at the direction of the undersigned. They are:

(1) Plaintiff['s] ... Further Response To ... First Request For Production Of Documents (# 189);

(2) Plaintiff['s] ... Further Answers To Interrogatories, Etc. (# 190);

(3) Letter from John B. Connarton, Jr., P.C. to Attorney Lisa C. Wood dated 5/29/87 with attachment of eighteen pages (# 195).

First, with respect to production of documents, the Court's Order was not to serve additional responses; the Order specifically required the plaintiff "to produce copies of additional documents *on or before the close of business on Wednesday, December 31, 1986.*" Order, Etc. (# 118) at p. 7. The Court's April 27th Order required the plaintiff to comply with the November 14th Order, i.e. to *produce* copies of additional documents, by May 8, 1987. Production did not occur by May 8. Evidently, one box of copies was produced on September 17, 1987, another on September 21, and a third delivery of documents occurred on September 28, 1987. Further deliveries were made on October 15, 1987, November 3, 1987, November 6, 1987 and December 8, 1987. No motion to alter the Court's Order or to extend the time for compliance was ever made. Plaintiff plainly violated both the November 14, 1986 and April 27, 1987 Orders of the Court.

■ Having noted this violation of the Court's Orders, I must further state that plaintiff's failure to comply with the Orders by not producing copies of the documents in a timely manner, without more, would not ordinarily result in a recommendation that such a serious sanction as that contained in Rule 37(b)(2)(D), F.R.Civ.P., be imposed. However, there is more.

■ Second, several copies of several documents were not produced because they were deliberately withheld by plaintiff's counsel in violation of the Court's Orders. Interrogatory # 29 served by Omni reads as follows:

INTERROGATORY NO. 29

Identify every Omni document supplied you by any past or present Omni employee while employed by Omni, including without limitation Brenda Quadrozzi, George Lovell, Richard Cannistra-

ro or Robert LaVoie, other than documents supplied you in the normal course of [sic] and reflecting your purchases of product as an Omni distributor; and identify the person who supplied each such document.

RESPONSE: Blake Associates, Blake [sic] and Eileen Blake object to this interrogatory on the grounds that it calls for the discovery of information which is protected from discovery by the attorney-client and work product privileges. Blake Associates, Blake and Eileen Blake further respond that all such documents are in the possession, custody or control, of Omni.

In addition to the "Response", there was a number of "General Objections" interposed. In its November 14th Order, the Court ruled on General Objection # 2 as follows:

*General Objection # 2*—This objection is OVERRULED. The privileges asserted do not protect facts from discovery nor do they protect against identification of documents or identification of communications. To the extent that the interrogatories seek identification of documents generated before December 16, 1981[1] or identification of communications occurring before December 16, 1981, the documents and/or communications shall be identified in response to the answers to interrogatories if such identification is necessary in order to respond truthfully and completely to the interrogatory. Documents generated after December 16, 1981 or communications occurring after December 16, 1981 as to which a privilege is asserted do not have to be identified in response to interrogatories.

Order, Etc. (# 118) at p. 1.

The Court's Order, with respect to Interrogatory # 29 in particular, was as follows:

*Interrogatory # 29*—The motion to compel is ALLOWED to the extent that the plaintiff shall respond in accordance with

1. December 16, 1981 was the date on which the Complaint in the instant case was filed.

the Court's ruling on General Objection # 2.

Order, Etc. (# 118) at p. 5.

The plaintiff's further response to this interrogatory, served April 29, 1987, reads as follows:

FURTHER RESPONSE: Plaintiff and counterclaim defendants restate their prior response less their previously stated general objections. In addition, the said parties state that pursuant to Rule 33(c), and subject to the Protective Order, they will make available for examination by counsel documents responsive to this interrogatory. With respect to those documents for which a privilege is asserted, the said parties have submitted a listing identifying those documents.

# 190 at p. 22.

The propriety of answering an interrogatory with reference to documents, as permitted by Rule 33(c), F.R.Civ.P., while at the same time claiming that the documents are privileged, will be discussed *infra*. Suffice it to say that in further responding to interrogatory # 29 by referencing Rule 33(c), plaintiff was stating that it would comply with the Court Order by producing documents which would contain the information sought by the interrogatory.

Even if the plaintiff had not invoked the provisions of Rule 33(c) to answer the interrogatory and had, instead, answered the interrogatory by identifying the document and providing the other information sought, the plaintiff was still under an obligation under the Court's November 14th Order to produce the documents which it identified. This is because in its Order, the Court allowed the motion to compel as to Omni's Request # 1. Request # 1, plaintiff's original response, and plaintiff's further response reads as follows:

REQUEST NO. 1

All documents identified, relied upon or referred to in answering the First Set of Interrogatories Propounded by Defendants and Plaintiff–In–Counterclaim Omni Spectra, Inc. and Ernest J. DeVita to Plaintiff Blake Associates, Inc. and Defendants–In–Counterclaim Joseph P. Blake and Eileen Blake.

RESPONSE: Plaintiff Blake Associates, Inc. and defendants-in-counterclaim agree to produce the documents which are responsive to this request except to the extent that they are already in the possession, custody or control of defendants Omni and DeVita and subject to the above qualifications and objections stated herein.

FURTHER RESPONSE: Plaintiff Blake Associates, Inc. and defendants-in-counterclaim agree to produce the documents which are responsive to this request except as to those documents otherwise required to be identified only pursuant to the Court's Order of November 14, 1986.

"[T]hose documents otherwise required to be identified only pursuant to the Court's Order of November 14, 1986" were those which the plaintiff claimed were privileged and which were generated before December 16, 1981.

Thus, the plaintiff was required by the terms of the November 14, 1986 Order to produce copies of the documents which were the subject of interrogatory # 29 even if the plaintiff had not invoked Rule 33(c) in its further response to that interrogatory.

Plaintiff admits that it has in its possession the documents which were required to be identified in response to interrogatory # 29 and produced in response to request # 1; none of the documents is claimed as privileged. In Plaintiff's Memorandum, Etc. (# 185) in opposition to Omni's recent motion to compel compliance (# 179), plaintiff's counsel writes:

4. *Blake's Failure to Produce the Lovell Invoices.*

The "Lovell invoices" so fervently sought by defendants are, in fact, simply copies of defendant Omni's own invoices to various of its distributors. Defendants admit, as they obviously must, to having copies of their own invoices. Defendants only complaint is that they do not know exactly *which* invoices plaintiff has copies of. Since defendants have consistently claimed that all of its invoices have been analyzed and found entirely proper, which invoices plaintiff has

should be irrevelant. Even so, plaintiff has no objection to producing for defendant all such invoices in its possession as long as defendant has finally, after five years and two Court Orders, produced copies of all of its distributor invoices. Defendants have consistently and continuously refused to produce copies of these documents. Once defendant has finally produced copies of all of its distributor invoices and copies of all of its documents supposedly justifying the pricing deviations and delivery favoritism known to exist, plaintiff will be in a position, without reservation, to provide copies of the Omni documents already in its possession.

Plaintiff's Memorandum, Etc. (# 185) at pp. 3-4.

The first four sentences of this argument are highly improper; the objection that Omni already had copies of these documents was specifically overruled in the November 14th Order. There is absolutely no excuse for the plaintiff re-arguing the point in a memorandum in opposition to a motion seeking compliance with the Court's Orders of November 14, 1986 and April 27, 1987.

The last three sentence are contumaceous. In a nutshell, plaintiff's counsel is stating that regardless of what the Court orders, the plaintiff will not obey the Court's orders unless Omni produces its documents first. The Court's Orders of November 14th and April 27th contained no provision that plaintiff need not comply until Omni first produced some discovery which plaintiff sought; plaintiff had no license to add this provision on its own. Plaintiff's conduct, and that of its counsel, produces an intolerable situation in which Court orders may be frustrated by unilateral action of one party. The plaintiff's disobedience of the Court's Orders of November 14th and April 27th with respect to these documents was willful, blatant and without any excuse whatever. In my opinion, the imposition of sanctions pursuant to Rule 37(b)(2)(D), F.R.Civ.P., is fully warranted on these facts.

▮ The third basis on which I recommend that sanctions pursuant to Rule 37(b)(2)(D), F.R.Civ.P., be imposed in this case is the manner in which the plaintiff invoked Rule 33(c), F.R.Civ.P., when further responding after the Court issued the November 14th and April 27th Orders. Rule 33(c), F.R.Civ.P., provides as follows:

(c) *Option To Produce Business Records.* Where the answer to an interrogatory may be derived or ascertained from the business records of the party upon whom the interrogatory has been served or from an examination, audit or inspection of such business records, including a compilation, abstract or summary thereof and the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served, it is a sufficient answer to such interrogatory to specify the records from which the answer may be derived or ascertained and to afford the party serving the interrogatory reasonable opportunity to examine, audit or inspect such records and to make copies, compilations, abstracts or summaries. A specification shall be in sufficient detail to permit the interrogating party to locate and identify, as readily as can the party served, the records from which the answer may be derived.

The last sentence of Rule 33(c) was added in 1980. The Advisory Committee, in explaining the addition, wrote:

The Committee is advised that parties upon whom interrogatories are served have occasionally responded by directing the interrogating party to a mass of business records or by offering to make all of their records available, justifying the response by the option provided by this subdivision. Such practices are an abuse of the option. A party who is permitted by the terms of this subdivision to offer records for inspection in lieu of answering an interrogatory should offer them in the manner that permits the same direct and economical access that is available to the party. If the information sought exists in the form of compilations, abstracts or summaries then available to

the responding party, those should be made available to the interrogating party. The final sentence is added to make it clear that a responding party has the duty to specify by category and location, the records from which answers to interrogatories can be derived.

85 F.R.D. 531.

In my November 14th Order, I ruled on thirty-three separate interrogatories for which Omni sought to compel further answers from the plaintiff. I ordered that the plaintiff serve further answers to twenty-nine of those. In its initial response to these twenty-nine interrogatories, the plaintiff did not make any reference to Rule 33(c), F.R.Civ.P. Plaintiff's further responses to each of the twenty-nine interrogatories, filed in purported compliance with the Court's Orders of December 14th and April 27th, were identical and read as follows:

FURTHER RESPONSE: Plaintiff and counterclaim defendants restate their prior response less their previously stated general objections. In addition, the said parties state that pursuant to Rule 33(c), and subject to the Protective Order, they will make available for examination by counsel documents responsive to this interrogatory. With respect to those documents for which a privilege is asserted, the said parties have submitted a listing identifying those documents.

# 190 at pp. 2, 4, 5, 7, 8, 9, 11, 12, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24.

In other words, the above-quoted paragraph was the *only* further response made to the twenty-nine interrogatories to which the plaintiff was ordered to serve further answers.

The further response is a wholly improper invocation of Rule 33(c), F.R.Civ.P., and, in the circumstances of this case, a plain violation of the Court's Orders of November 14th and April 27th.

At the outset, it must be said that it is highly doubtful that there was any burden on plaintiff in answering the interrogatories in the traditional manner. "... [A] prerequisite for invoking the Rule 33(c) option is that there be a burden on the interrogated party if required to answer the interrogatory in the traditional manner" and "[t]his prerequisite, although not explicitly contained in the Rule, is implicit in its provisions." *Sabel v. Mead Johnson & Co.*, 110 F.R.D. 553, 556 (D.Mass., 1986) citing *Pascale v. G.D. Searle & Co.*, 90 F.R.D. 55, 60–61 (D.R.I., 1981) and *Thompson v. Leiter*, 52 F.R.D. 290, 291 (M.D.Ala., 1971). In serving its original answers to the interrogatories, plaintiff interposed no objections based on burdensomeness and, in fact, provided answers to some of the interrogatories. I do not say that a prior objection based on burdensomeness is a precondition for invoking Rule 33(c) when ordered to produce further answers. In this case, however, the plaintiff does not even state, much less show, that providing further answers in the traditional manner would be a burden and there is nothing in the interrogatories themselves or in the initial answers from which it could be inferred that providing further answers would be burdensome. In all the circumstances, the invocation of Rule 33(c) in its further responses seems to me a means to avoid answering the interrogatories rather than a means to provide information from which the answers could be derived. I do not cite this aspect as a separate basis for the imposition of sanctions pursuant to Rule 37(b)(2)(D), F.R.Civ.P.; however, it bears mentioning, especially in view of what follows.

The plain fact is that the identical responses wholly fail to comply with the "specification" requirement of Rule 33(c), F.R.Civ.P., which provides that "it is a sufficient answer ... to *specify* the records from which the answer may be derived." In its response to the twenty-nine interrogatories, plaintiff merely states that it "... will make available for examination by counsel documents responsive to this interrogatory." This is patently insufficient. The insufficiency is even more striking when it is recalled that the Rule goes on to state that the specification must be "... in sufficient detail to permit the interrogating party to locate and identify, as readily as can the party served, the records from

which the answer may be derived." An even cursory reading of Rule 33(c) would have alerted reasonably competent counsel to the fact that plaintiff's answers were wholly deficient. Because the answers were deficient, the plaintiff failed to comply with the Court's Orders of November 14th and April 27th. The deficiency in this regard was so obvious that the failure to comply warrants the imposition of sanctions pursuant to Rule 37(b)(2)(D), F.R.Civ. P. As with the claim that answering the interrogatories in the traditional manner was burdensome which was discussed in the preceding paragraph, the clear inference from the non-specification of documents is that the invocation of the Rule was a means of avoiding the requirements of the Court's Orders, not a means of complying with them.

■ However, the most egregious conduct of the plaintiff with respect to invoking Rule 33(c), F.R.Civ.P., was plaintiff's simultaneous invocation of that rule which directed the defendant to documents for the information sought and the assertion of a claim of privilege as to many of those documents. It does not take a great deal of cognitive thinking to realize that it is improper to invoke Rule 33(c) in answer to interrogatories and then claim that some or all of the documents containing the information are privileged and not subject to disclosure. If a party is going to invoke Rule 33(c), the party must be prepared to allow inspection of the documents which contain the answers to the interrogatories. If a party is going to claim a privilege with respect to documents, the party cannot use Rule 33(c); rather, the party must answer the interrogatory in the traditional manner.

As noted *supra,* the plaintiff's identical responses to the twenty-nine interrogatories recited, in part:

...[P]ursuant to Rule 33(c), and subject to the Protective Order, they will make available for examination by counsel documents responsive to this interrogatory. With respect to those documents for which a privilege is asserted, the said parties have submitted a listing identifying those documents.

# 190 at pp. 2, 4, 5, 7, 8, 9, 11, 12, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24.

Attached to the further answers (# 190) is an eighteen page list of documents. The only reference in the further answers to any list is in the twenty-nine identical "further responses". One would, in these circumstances, assume that the list was, in fact, a list of documents which the plaintiff considered privileged. Evidently, Omni's counsel thought so. However, this was not the case. On May 29, 1987, plaintiff's counsel sent another copy of the list and underlined in red those documents on the list which plaintiff considered privileged. *See* Letter of John B. Connarton, Jr., P.C. to Attorney Lisa C. Wood dated 5/29/87 (# 195). I do not understand what the list of documents.not underlined in red represents; this inability to understand persists even after reading and re-reading plaintiff's counsel's purported explanation. *See* Affidavit of John B. Connarton, Esquire (# 191) at pp. 12–13.

Omni's counsel's version is as follows:

After reviewing Blake's supplemental discovery answers, I phoned Mr. Connarton to address several inadequacies in his response. I do not remember the precise day I phoned Mr. Connarton, although upon reviewing my time sheets, it appears that it must have been on either May 26, 27 or 29, 1987. I remember raising two concerns with Mr. Connarton. First, I was concerned that Mr. Connarton was claiming that the attorney-client privilege protected many clearly unprivileged documents. This concern was based on my review of a list of documents attached to Blake's supplemental interrogatory answers that I had understood, from the text of the supplemental answers, to be a list of privileged documents. When I raised this issue with Mr. Connarton, he indicated that the list appended to the supplemental answers was not a list of privileged documents, but instead a list of documents upon which his Rule 33 response was based. However, he did indicate that some of the documents listed were privileged. Accordingly I asked him, and he

agreed, to send me a red-lined version of the list of documents, underscoring all documents claimed to be privileged. Mr. Connarton forwarded me such a list on May 29, 1987.

Supplemental Affidavit Of Lisa C. Wood (# 194) at pp. 12–13.

Plaintiff's counsel now avers that "[i]n its reference and use of Rule 33(c), Blake *specifically did not* limit its document production to the 'listing' of memoranda also supplied to Omni" and that "Blake's reference and use of Rule 33(c) made reference to all of its documents being produced." Counsel went on to note that "[b]eing a small entity, Blake's documents amounted only to approximately nine boxes, all of which ... were produced, copied and delivered to Omni." *See* Affidavit of John B. Connarton, Esquire (# 191) at p. 13.

Regardless of what actually happened and what plaintiff's intent actually was, it is clear beyond peradventure that some of the documents claimed to be privileged contained information responsive to at least some of the interrogatories. It is equally clear that by simultaneously invoking Rule 33(c) and then claiming that some of the documents were privileged, plaintiff effectively prevented Omni from obtaining discovery to which it was entitled under the Court's Orders of November 14th and April 27th. The tactic also placed the plaintiff in violation of the Court's Orders of November 14th and April 27th; the Court's Orders were to answer the interrogatories, i.e. to provide the information. Plaintiff did not do so. In all the circumstances, plaintiff's disobedience of the Court's Orders in this regard is so egregious as to fully warrant the imposition of sanctions pursuant to Rule 37(b)(2)(D), F.R.Civ.P.

An example serves to make the point. Interrogatory # 33 propounded by Omni, plaintiff's first response and further response read as follows:

INTERROGATORY NO. 33

In connection with your claims for damages in paragraphs 28, 31, 34, 39, 43 and 47 of the Complaint:

(a) state precisely and in full detail the basis on which you claim that the facts alleged in the complaint, if proved, resulted in any damages or injuries to you, and state exactly in what way you claimed to have relied upon each such fact;

(b) state separately and in full detail exactly how you calculate each item of damages which you claim in this case, including all sales and profits which you claim you suffered, all facts and opinions upon which you rely in arriving at your calculations, and the amount of each item of damages; and

(c) identify any document supporting or relating to your damage claims.

RESPONSE: Subject to the above general objections, Blake Associates responds that it sustained injury to its reputation and a loss of good will, sales and profits in connection with its sales of Omni microwave parts as a proximate result of the acts alleged in the complaint and described in these answers to interrogatories.

At least from 1978 to approximately mid–1981, Blake Associates' total volume of purchases from Omni increased each year, and its total purchases more than doubled between 1978 and 1980. Blake Associates presently estimates that the level of its sales of Omni microwave parts in 1981 amounted to approximately one-half of that anticipated based upon Blake Associates' past history and industry characteristics, and that substantially the same percentage of anticipated sales resulted in 1982. Such decline in anticipated sales resulted in a decline in actual gross profits and a loss of anticipated gross profits attributable to defendants' wrongful conduct, which amounts Blake Associates has not yet calculated in their entirety.

FURTHER RESPONSE: Plaintiff and counterclaim defendants restate their prior response less their previously stated general objections. In addition, the said parties state that pursuant to Rule 33(c), and subject to the Protective Order, they will make available for examination by counsel documents responsive to this interrogatory. With respect to those doc-

uments for which a privilege is asserted, the said parties have submitted a listing identifying those documents.

Plaintiff Blake Associates, Inc. . . . . Further Answers To Interrogatories, Etc. (# 190) at pp. 22–23.

Among the documents listed which are underlined in red are the following which obviously contain information required to be provided in answer to interrogatory # 33:

| | |
|---|---|
| 4/21/81 | - Memo entitled "Decrease in Orders Received by Blake Associates" |
| 12/7/81 | - Memo entitled "Forecast Losses for Future" |
| 1/19/82 | - Memo entitled "Potential Lost Order" |
| 1/20/82 | - Memo entitled "Disappearing Order" |
| 2/8/82 | - Memo entitled "Favoritism in Shipment—Lost Orders" |
| 8/24/82 | - Memo entitled "Lost Business" |
| 8/30/82 | - Memo entitled "Lost Order—Foxtronix" |
| 9/8/82 | - Memo entitled "Foxtronix—Saved One Order by Intelligence" |

Omni claims that no other documents produced provide the factual matter contained in these documents. *See* Omni Spectra's Motion To Compel Compliance With Discovery Orders (# 179) at p. 2. Plaintiff does not even attempt to argue that the information is obtainable in other documents produced; in fact, the plaintiff does not even address Omni's claim that the plaintiff failed to obey the Orders to serve a further answer to interrogatory # 33. *See* Plaintiff's Memorandum In Opposition, Etc. (# 185) at p. 3. Plaintiff's only point is that it has produced its financial statements prepared by its accountants and that these financial statements are "subject to any analysis desired by defendants." *Id.* I can only assume that these financial statements are standard financial statements prepared by accountants on an annual basis. If that is so, I can see no way in which these documents can provide the kind of information sought by interrogatory # 33. In the absence of any contrary showing by the plaintiff, I accept Omni's contention that documents produced do not provide the information ordered to be produced in response to interrogatory # 33.

In sum, the situation is that when Orders were issued to the plaintiff to provide further responses to interrogatories, Rule 33(c) was invoked. Not only did the documents made available not provide the information but also documents which plainly would provide some information responsive to the interrogatory were held as privileged. The Court's Orders of December 14th and April 27th were violated; sanctions pursuant to Rule 37(b)(2)(D), F.R. Civ.P., should be imposed.

■ A few words should be added as to why I am of the view that sanctions should be imposed in this case at this time and why I have recommended the imposition of a sanction pursuant to Rule 37(b)(2)(D), F.R.Civ.P. I am well aware that about a week after the hearing before me on December 29, 1987, a settlement was reached between the parties and that the parties have "made peace" with each other on all the issues raised in the case, including those relating to discovery. I am further well aware that there are those who would opine that in these circumstances, it would be best to let the whole matter of plaintiff's violations of the Court's Orders rest and let the parties and the Court move on to other things. In the majority of cases, I would most likely concur in that opinion, but not in this case. The violations were too egregious to let them pass without Court action.

What the plaintiff did, in essence, was to engage in conduct which wasted an inordinate amount of the time and resources of the opposing party, its counsel and the Court. Omni's motions to compel involved a majority of the interrogatories and requests which had been served. Considerable written argument was submitted by both sides on the motions and the Court heard the parties orally. It took a significant amount of time to resolve the disputes; the Court's Order of November 14, 1986 was intended to be a comprehensive resolution of those disputes and a guide which would enable discovery to proceed in a reasonably efficient and prompt manner. I did not impose any costs or attorneys fees in connection with the Order, as I might

have done, because I anticipated that the Order would be obeyed, and when it was obeyed, written discovery would have be completed within a very short time and discovery by depositions could commence expeditiously thereafter.

■ In these circumstances, the responses of the plaintiff, which were in specific violation of several portions and in general violation of substantial portions of the November 14th Order, cannot be condoned, excused or passed over. Not only must plaintiff and its counsel be deterred from such action in the future but also litigants and attorneys advising them must know that such serious violations of Court orders will not be permitted in any circumstances. In other words, action by the Court on these violations is necessary for the purposes of both specific and general deterrence, both of which are legitimate purposes for imposing the most serious sanctions under Rule 37, F.R.Civ.P. *See Damiani v. Rhode Island Hospital,* 704 F.2d 12, 15–16 (1 Cir., 1983) citing *National Hockey League v. Metropolitan Hockey Club,* 427 U.S. 639, 642–43, 96 S.Ct. 2778, 2780–81, 49 L.Ed.2d 747 (1976) and *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 763–64, 100 S.Ct. 2455, 2462–63, 65 L.Ed.2d 488 (1980). The words of the First Circuit in the *Damiani* case, upholding the District Court's dismissal of a case as a sanction under Rule 37(b)(2), F.R.Civ.P., are right to the point:

> Not only was there willful disobedience of the court's order, but plaintiff's attorney arrogated control of discovery to himself and changed the date of compliance to suit his own convenience and that of his client. If such conduct were condoned by a slap on the wrist, the District Court ... might well find lawyers calling the tune on discovery schedules. There is no claim that such conduct was accepted practice in the District Court ... or had been tacitly sanctioned by the court in other cases.
>
> \* \* \* \* \* \*
>
> When a plaintiff brings a lawsuit such as this, necessarily involving detailed and lengthy discovery, he must adhere strict-

ly to the rules. The day has long passed when we can indulge lawyers the luxury of conducting lawsuits in a manner and at a pace that best suits their convenience. The processing of cases must proceed expeditiously if trials are to held at all.

*Damiani, ante,* 704 F.2d at 16–17 (footnote omitted).

■ The reason why I recommend that the sanction of criminal contempt be imposed is that I believe the plaintiff and its principals should be made to pay a significant monetary fine as punishment for plaintiff's violations of the Court's Orders of November 14, 1986 and April 27, 1987. As I understand the law, the only basis on which a punitive fine may be imposed for violation of discovery orders is by citing the violator for criminal contempt. Civil contempt is available only for the purpose of enforcing compliance with the Orders. *See United States v. Westinghouse Electric Corp., supra,* 648 F.2d at 651. There is no basis for a citation for civil contempt in view of the settlement.

■ In fact, of the sanctions available under Rule 37(b)(2), F.R.Civ.P., only the sanction for contempt under Rule 37(b)(2)(D) acts on one party without inuring directly to the benefit of another party in the case. All of the other sanctions, i.e. dismissal, default, issue preclusion, payment of attorney's fees, etc., act in such a way as to recompense or benefit another party in the case who is the "victim" of the disobedience of the Court's order. None of these sanctions are appropriate at this time in this case in view of the settlement, since I presume that the settlement represents an accommodation between the parties of all issues between them, including any claims Omni may have against the plaintiff for violations of discovery orders, such as claims for costs and attorney's fees in connection with those violations. Of course, settlements are to be encouraged, and, therefore, I do not recommend the imposition of any sanctions which will upset the balance the parties have struck between themselves. Rather, I recommend the only sanction available in the present circum-

stances of this case which will not alter the agreement reached between the parties but which will have the very important effect of vindicating the Court's authority to issue orders relating to discovery and which will act to deter not only the plaintiff and its counsel in this case but others engaged in civil litigation before this Court who might be tempted to disobey the Court's Orders with the notion that they may do so with impunity. The goal of being able to manage the pretrial litigation of civil cases in an effective manner, in my opinion, requires no less.

The parties are hereby advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has indicated that failure to comply with this rule shall preclude further appellate review. See *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1 Cir., 1980); *United States v. Vega*, 678 F.2d 376, 378–79 (1 Cir., 1982); *Scott v. Schweiker*, 702 F.2d 13, 14 (1 Cir., 1983). *See also, Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).